(156 App. Div. 584.)

## H. G. VOGEL CO. v. WOLFF.

(Supreme Court, Appellate Division, First Department. May 16, 1913.)

1. SALES (§ 479*)—CONDITIONAL SALES—RECOVERY OF POSSESSION.

Under a contract for the installation of a fire extinguishing apparatus, the apparatus to remain the property of the seller until paid for, the seller was entitled to recover the possession by replevin, if the purchaser had failed to pay or tender the full amount due; and hence a defense alleging a tender of the amount claimed by the purchaser to be due was not a partial defense, but was either a complete defense, if the amount tendered was the full amount due, or no defense at all, if not the full amount due.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1418–1432, 1434–1438; Dec. Dig. § 479.*]

2. SALES (§ 89*)—MODIFICATION OF CONTRACT—SUFFICIENCY OF CONSIDERATION.

Where a contract for the installation of a fire extinguishing apparatus was in fact rescinded by the purchaser because of a contemplated delay in the installation, an agreement by the seller to allow credit on the purchase price for the difference between the purchaser's insurance premiums and the reduced rate to which the installation of the apparatus would entitle him during the period of the delay was not void for want of consideration, even though the purchaser had no right to rescind the contract, since, having rescinded it, the seller could not recover the contract price or enter on the purchaser's premises for the purpose of completing the installation, but could only have sued for a breach of the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 251, 252, 259; Dec. Dig. § 89.*]

3. SALES (§ 89*)—MODIFICATION OF CONTRACT—SUFFICIENCY OF CONSIDERATION.

A modification of a contract for the installation of a fire extinguishing apparatus, so as to give the purchaser credit on the purchase price for the difference between insurance premiums and the rate to which the installation of the apparatus would entitle him during the period of a delay in installation, was not invalid because part of the insurance in question was that of a third party, since the parties could fix the compensation to be paid for the apparatus at any price they pleased, and could agree to a deduction for the loss of the reduction in the premiums by the third party.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 251, 252, 259; Dec. Dig. § 89.*]

4. PLEADING (§ 80*)—ANSWER—PLEADING COMPLETE DEFENSE AS PARTIAL DEFENSE.

A defense alleging facts which would prevent a recovery and entitle defendant to judgment cannot be held bad, because alleged as a partial rather than as a complete defense.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 162, 181–183; Dec. Dig. § 80.*]

5. SALES (§ 479*)—CONDITIONAL SALES—ACTIONS—COUNTERCLAIM OR SET-OFF.

In replevin to recover a fire extinguishing apparatus, installed in defendant's building under an agreement that title should remain in the seller until paid for, a modification of the agreement, by which the seller agreed to pay the purchaser the difference between his insurance premiums and the reduced rate to which the installation of the apparatus would entitle him during a delay in the installation, and authorized the

purchaser to deduct such amount from the purchase price, and a tender of the amount due on the purchase price with such credits deducted, was not properly pleaded as a counterclaim, since the purchaser was not entitled to recover the difference in the premiums, but only to deduct it from the amount due the seller, nor as an offset, the action not being brought for the purchase price, but for possession of the apparatus, on the theory that the seller was still the owner.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1418–1432, 1434–1438; Dec. Dig. § 479.*]

Clarke and Dowling, JJ., dissenting.

Appeal from Special Term, New York County.

Action by the H. G. Vogel Company against Harris Wolff. From an order sustaining a demurrer to a partial defense and counterclaim contained in the answer, defendant appeals. Modified.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Charles Goldzier, of New York City, for appellant.
David Bernstein, of New York City, for respondent.

INGRAHAM, P. J. This action is in replevin. The complaint alleges that at the time of the commencement of this action, and on or before the 5th of May, 1911, the plaintiff was and still is the owner and entitled to the immediate possession of certain chattels mentioned in the schedule annexed to the complaint; that such chattels were of the value of $13,656; and the complaint demanded possession thereof, or to recover the sum of $9,156 in case possession thereof cannot be given to the plaintiff.

The answer, after denying certain allegations of the complaint, alleges as a partial defense thereto and as a counterclaim that the defendant was and still is a large stockholder in a domestic corporation known as the Realty Company in West Twenty-Sixth street, owning almost the entire stock of the said corporation; that the said Realty Company is the owner of the premises known as 518–534 West Twenty-Sixth street; that the defendant owned, managed, controlled, and conducted a business as a bookbinder at said premises, and has had in his possession on said premises a large amount of property; that this Realty Company is the owner of the property, and had a large fire insurance, amounting in the aggregate to $450,000, upon the building, and the plaintiff individually was insured upon its personal property in the building to the amount of $300,000; that the premiums paid upon this insurance would be largely reduced if a system of fire extinguishing apparatus was installed in the said premises; that these facts were stated to the plaintiff; that the defendant desired this fire extinguishing apparatus installed for the sole and only purpose of reducing said cost of insurance, both on the building owned by the Realty Company and on the contents thereof owned by the defendant, and it was upon this basis that the contract for the installation of the said fire extinguishing apparatus was entered into; that the plaintiff promised and agreed with the defendant, as the condition of making the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

contract, that the fire extinguishing apparatus would be installed in said premises and completed on or before the 1st day of September, 1911, and thereupon the parties made a contract, a copy of which is annexed to the answer.

This contract consisted of a proposal, dated May 5, 1911, by the plaintiff to the defendant, wherein the defendant was recited as the owner of the premises in which the apparatus was to be installed, to equip the building with a system of fire extinguishing apparatus as described and enumerated in the specifications which were made a part of the proposal. This apparatus was to be in conformity with the standard construction acceptable to the New York Fire Insurance Exchange. It was further agreed that the plaintiff should retain the title to all the material and equipment until full payment should be made therefor, with the right to enter upon the premises and remove the same in case of any default in payment, but until such final payment or removal the said materials and equipment were hired, let, and leased by the plaintiff to the defendant at a rental of $1 per month; that the agreed price for the work specified was $13,400, based on the installation of 2,171 sprinklers. It was further understood and agreed with regard to the payments that the first payment under the contract should be made when all the materials to install the equipment were in the premises; the second payment to be made September 15, 1911, or 30 days after the completion of the work; the final payment of the balance of the account to be made on January 15, 1912.

It was further alleged in this defense that subsequent to the execution of the said agreement for the installation of the said apparatus the plaintiff notified the defendant that the occurrence of unforeseen circumstances might prevent the completion of the said fire extinguishing apparatus on or before the 1st day of September, 1911, and that the plaintiff might not be able to have the said apparatus completed by said date, and thereupon the defendant canceled and rescinded the contract and refused to permit the plaintiff to continue thereunder.

It was then alleged that as an inducement to cause this defendant to permit the plaintiff to continue under said contract, and as a consideration for the granting to this plaintiff by the defendant of an extension of time to complete the installation of the said fire extinguishing apparatus as aforesaid, the plaintiff promised and agreed to pay to the defendant the difference between the insurance premiums then paid by the said Realty Company and by this defendant to the various fire insurance companies and the reduced rate of insurance agreed upon by such fire insurance companies to be accepted upon the completion of the said fire extinguishing apparatus, the amount of premiums being made known by the defendant to the plaintiff for a period from the 1st day of September, 1911, to the completion of the installation of the said fire extinguishing apparatus as aforesaid, and until it should be approved by the board of fire underwriters as completed, and authorized and instructed the defendant to deduct from the price agreed to be paid by the Realty Company and by this defendant to the plaintiff for the installation of the said fire extinguishing apparatus as aforesaid the difference between the amount then paid by the Realty

Company or by this defendant for said insurance and the reduced amount agreed to be accepted by said insurance companies upon the approval by the said insurance companies of the said apparatus as aforesaid, the amount of saving being made known to the plaintiff by this defendant, and that if the installation of the said fire extinguishing apparatus was not completed on or before the 1st day of September, 1911, that no payment of any sum or sums shall be made under such contract by said defendant to this plaintiff, whether so provided in the contract or not, until the said fire extinguishing apparatus was actually completed and approved by the board of fire underwriters, by them accepted, and the reduced rate of insurance allowed; that the plaintiff failed to complete the installation of the said apparatus on or before the 1st day of September 1911; that the said fire extinguishing apparatus was not completed and installed until the month of June, 1912, and was not accepted and approved by the board of fire underwriters until the 19th of June, 1912, causing a delay in the reduction of the amount paid for said insurance on said building and on the contents thereof for a period of 8½ months; that the total loss during this period of 8½ months of said insurance on the defendant's personal property in the building was $1,897.88, and the total loss during the period by the said Realty Company was $1,472.65, making the total loss during the period by the Realty Company and by the defendant $3,340.53; that the defendant has fully paid to the plaintiff all sum or sums due from the defendant under said contract, excepting the sum of $5,848.81, which the defendant has offered to the plaintiff, and was at all times ready, willing, and able to pay to the plaintiff, and before the commencement of this action offered to pay that amount to the plaintiff, but that the plaintiff refused to accede to the deduction and refused to accept the sums offered; that said sum claimed by the defendant to be due was deposited in a trust company under an agreement with the plaintiff to the credit of the plaintiff; that defendant has fully carried out and performed all the terms and conditions of the contract on his part to be performed, and is the sole and lawful owner of the articles mentioned and described in the complaint, and the plaintiff has no right or title thereto, nor is the plaintiff entitled to the possession thereof.

[1] Under the contract under which this sprinkling apparatus was installed the apparatus remained the property of the plaintiff until paid for. If the defendant has failed to pay the amount due, then the plaintiff is entitled to recover possession of the apparatus that is installed upon the defendant's premises. It seems to me that the sole question presented is whether, on the facts alleged in the answer, there is due to the plaintiff from the defendant a greater sum than the amount deposited in the trust company to the credit of the plaintiff, and which sum the defendant has been ready and willing to pay.

Strictly speaking, this is not a partial defense to the action, although pleaded as such; for if the defendant has paid or offered to pay all that is due the plaintiff under the contract, then the plaintiff is not the owner of the property, but the title to it has passed to the de-

fendant. If the defendant has not offered to pay and actually paid into the trust company all that the plaintiff is entitled to, then the plaintiff still remains the owner of the property and is entitled to maintain this action. So the only question to be determined is whether upon the facts alleged there was an actual modification of the contract by which the defendant was to be entitled to deduct from the contract price the amount of money that it would have saved if this apparatus had been installed on the 1st of September, 1911, down to the time that the apparatus was finally installed and the defendant realized the benefits of such installation in the reduction of the charges for insurance.

[2] It is claimed that there was no consideration for this so-called agreement modifying the original contract, but that under the contract the defendant was bound to allow the plaintiff to install this apparatus, and was bound to pay for it in accordance with the terms of the contract; but the answer alleges that the defendant had actually rescinded the contract and refused to allow the plaintiff to perform. Assuming that this contemporaneous agreement as to the time within which the contract should be completed would not justify a rescission of the contract, the defendant had actually rescinded it, and the plaintiff's remedy then was an action at law for a breach of the contract. In the face of such rescission the plaintiff could not have entered the premises occupied by the defendant against his wishes and install the apparatus, nor could he have recovered the contract price. Therefore when that condition existed, and the parties made and entered into a contract modifying the original agreement, by which the plaintiff was allowed to go on and furnish the apparatus, and the defendant was to be allowed to deduct from the contract price the amount of insurance which the defendant would have saved if the contract had been completed on the 1st of September, 1911, and that contract was executed by the plaintiff proceeding with the construction and installation of the apparatus, and the defendant allowing plaintiff access to the premises to complete the contract and making payments on account of the contract price, the original contract was modified accordingly.

[3] The defendant is not suing to recover an amount due and owing to the Realty Company, or for damages sustained by the Realty Company by a breach of the plaintiff's contract. The parties had a right to fix the compensation to be paid for this apparatus at any price they pleased, and as I view it the parties were at perfect liberty to agree to allow the defendant to deduct the amount which the Realty Company would be entitled to by reason of the reduced premiums of insurance from the contract price. Such an agreement having been made, and it having been executed by both of the parties to it, I think the defendant was entitled to make the deductions; and if this supplemental contract was proved, then the defendant has paid or offered to pay all that it was bound to pay to the plaintiff for the installation of the apparatus, and therefore the plaintiff is not the owner of the personal property, to recover possession of which this action was

brought, and its action cannot be maintained. I think there was, therefore, a good defense alleged.

[4] It is true that this is alleged as a partial defense, and that there is a line of cases holding that a defense which is partial is not properly pleaded if pleaded as a complete defense; but I do not think the converse of that proposition is true—that where the defendant as a defense alleges facts which would prevent a recovery and entitle the defendant to judgment it cannot be held to be bad as a defense because it is alleged as a partial rather than as a complete defense.

[5] I do not, however, think these facts were properly pleaded as a counterclaim. The defendant was not, under his agreement, entitled to recover from the plaintiff the difference between the insurance premiums actually paid and the insurance premiums which would have been paid, had the apparatus been completed by the 1st of September, 1911. If the facts alleged are true, he was entitled to deduct that difference from the amount due or to be paid for the installation of the apparatus. As pleaded, it was not even an offset, because this action was not brought to recover the purchase price, but was based upon the fact that under the contract the plaintiff remained the owner of the installed apparatus. If the defendant has paid or offered to pay the amount actually due, then the plaintiff cannot maintain this action; if he has not paid or offered to pay the amount actually due, then the plaintiff has never parted with its title to the installed apparatus, and is entitled to recover. I think the demurrer to the facts alleged as a counterclaim should have been sustained, but the demurrer to the facts alleged as a defense to the plaintiff's cause of action should have been overruled.

If I am right, the order appealed from should be modified, so as to sustain the demurrer to the counterclaim and overrule plaintiff's demurrer to the defense, and that the order, as modified, should be affirmed, but without costs to either party on this appeal.

SCOTT and HOTCHKISS, JJ., concur. CLARKE and DOWLING, JJ., dissent, and vote to affirm.